**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

GEORGE HOLLAND,

        Plaintiff,

v.                              CIVIL ACTION NO.   2:25-cv-00643

ECO USA LLC,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant ECO USA LLC's ("Defendant") Motion to Dismiss. (ECF No. 5.)   For the reasons discussed herein, this motion is **DENIED**.

## I.    *BACKGROUND*

This matter arises out of a contract dispute.   (*See* ECF No. 1-1.)   According to the Complaint, Plaintiff George Holland ("Plaintiff") was employed by Defendant until January 2, 2025.   (ECF No. 1-1 at 4, ¶ 1.)   On January 2, 2025, Defendant allegedly issued Plaintiff a termination letter (the "Letter"), which stated that—upon Plaintiff's compliance with the terms of the Letter—his unused accrued vacation time will be paid out in full.   (*See id.*, ¶¶ 2–3; *see also id.* at 7 ("In exchange, . . . [t]he unused accrued vacation time that you have accumulated, starting on 6/11/24 will also be paid out in full.").)   Plaintiff contends that he complied with the terms of the Letter.   (*Id.* at 4, ¶ 4.)

1

However, the Complaint alleges that Defendant has failed and refused to pay Plaintiff for his unused, accrued vacation time, despite his written demand for such. (*Id.*, ¶¶ 5–6.) Plaintiff claims that his unused, accrued vacation time totals 160 hours, which equates to "$7,153.84 (gross)." (*Id.*, ¶ 7.) Consequently, Plaintiff filed the pending lawsuit, which asserts one claim under the West Virginia Wage Payment and Collections Act ("WPCA") against Defendant. (*See id.* at 5.)

Defendant removed the matter to this Court, (ECF No. 1), and filed the pending Motion to Dismiss, (ECF No. 5). Plaintiff filed a response, (ECF No. 7), and Defendant filed a reply, (ECF No. 8). As such, this motion is fully briefed and ripe for adjudication.

## II.    LEGAL STANDARD

A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a civil complaint. Fed. R. Civ. P. 12(b)(6). A plaintiff must allege sufficient facts, which, if proven, would entitle him to relief under a cognizable legal claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). A case should be dismissed if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In applying this standard, a court must utilize a two-pronged approach. First, it must separate the legal conclusions in the complaint from the factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Second, assuming the truth of only the factual allegations, the court must determine whether the plaintiff's complaint permits a reasonable inference that "the defendant is liable for the misconduct alleged." *Id.* Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will

2

not do." *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)).   A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible."   *Twombly*, 550 U.S. at 555, 570.

### III.   DISCUSSION

Here, Defendant argues that Plaintiff has failed to state a claim because payment for his unused, accrued vacation does not constitute "wages" under the WPCA.   (ECF No. 6 at 5.) Plaintiff disagrees.   (ECF No. 7.)   For support, both parties rely on divergent interpretations of cases from the Supreme Court of Appeals of West Virginia ("WVSCA").   An exhaustive discussion of the WPCA and relevant caselaw is provided below before the Court addresses the facts of this case.

### A.   The West Virginia Wage Protection and Collection Act

The WPCA is "remedial legislation designed to protect working people and assist them in the collection of compensation wrongly withheld."   *Mullins v. Venable*, 297 S.E.2d 866, 869 (W. Va. 1982) (citing *Farley v. Zapata Coal Corp.*, 281 S.E.2d 238 (W. Va. 1981)).   The WVSCA has held that the WPCA must be liberally construed "as to furnish and accomplish all the purposes intended."   *Meadows v. Wal-Mart Stores, Inc.*, 530 S.E.2d 676, 688 (W. Va. 1999) (internal citations omitted).

Under the WPCA, certain payment of wages is required after employment ends.   *See* W. Va. Code § 21-5-4(b), (c).   "If a person, firm, or corporation fails to pay an employee wages as required under this section, the person, firm, or corporation, in addition to the amount which was

unpaid when due, is liable to the employee for two times that unpaid amount as liquidated damages." W. Va. Code § 21-5-4(e). The WPCA defines wages as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission, or other basis of calculation." W. Va. Code § 21-5-1 (c). Further, "[a]s used in § 21-5-4 . . . the term 'wages' shall also include *then accrued fringe benefits* capable of calculation and payable directly to an employee." *Id.* (emphasis added). In turn, the term "fringe benefits" is defined as "any benefit provided an employee or group of employees by an employer, or which is required by law, and includes regular vacation, graduated vacation, floating vacation, holidays, sick leave, personal leave, production incentive bonuses, sickness and accident benefits, and benefits relating to medical and pension coverage." *Id.* § 21-5-1(l); *see also Miller v. St. Joseph Recovery Ctr., LLC*, 874 S.E.2d 345, 354 (W. Va. 2022) ("[T]he Legislature used the word 'includes' to signify that the list of fringe benefits is meant to be a nonexclusive list of examples.").

In *Meadows*, the WVSCA consolidated five cases and addressed whether the WPCA "requires employers to pay employees unused sick leave or vacation pay in the same manner as wages, regardless of the terms of the applicable employment policy, upon separation from employment." 530 S.E.2d at 680. It held that it does not. *Id.* In resolving this issue, the WVSCA determined that the term "accrued" in West Virginia Code § 21-5-1 (c) means "vested." *Id.* at 688-89. The WVSCA explained that "[t]he concept of vesting is concerned with expressly enumerated conditions or requirements all of which must be fulfilled or satisfied before a benefit becomes a presently enforceable right," but "the WPCA contains no such conditions or requirements." *Id.* Thus, "the payment of fringe benefits can only be governed by the terms of employment found in employment policies promulgated by employers and agreed to by

4

employees." *Id.* at 689. "Accordingly, the terms of the applicable employment policy, and not the WPCA, determine whether fringe benefits are included in the term 'wages' under W. Va. Code § 21-5-1(c)." *Id.*

In application, this holding had various effects. For example, one plaintiff was not entitled to payment for unused sick leave because her employer's "Illness Protection Policy" stated that "[u]nused Illness Protection Hours will not be paid to Associates upon termination of employment except where required by state law." *Id.* at 690. Two other employees were not entitled to payment for their unused sick leave because their employer's policy stated "[s]hould an employee with accumulated personal and sick days leave the company, no payment will be made for these days." *Id.* (also finding that these employees were not entitled to payment for unused vacation time because they were employed for less than a year, and their employer's policy stated that "[h]ourly employees will earn vacation on their anniversary date. By this we mean that to earn a vacation, an hourly employee must be employed . . . for 52 consecutive weeks"). In another instance, a plaintiff was entitled to payment for unused sick benefits because the employment handbook was silent on the issue. *Id.* at 695–96 ("The terms of employment in the instant case do not expressly state that employees who are separated from employment will not receive cumulative sick days not taken during the course of employment," and, "[i]n fact, the sick pay policy is silent on the issue of the payment of unused sick pay upon separation from employment.").

However, the WVSCA later found that a former employee was *not* entitled to payment for unused sick leave after employment ends, despite a lack of a written policy stating so. *Compare id. with Ingram v. City of Princeton,* 540 S.E.2d 569 (W. Va. 2000). In *Ingram*, a former

5

employee who had filed the action under the WPCA alleging that his former employer failed to pay him for unused, accrued sick leave.   540 S.E.2d 569.   The former employer argued that to be entitled to the unused sick leave, "there had to be an express agreement between the parties that such payment would be made upon separation."   *Id.* at 574.   The WVSCA concluded that, because (1) the employer did not have a written statement on the issue of payment for unused sick leave, and (2) the employee knew that the employer had an unwritten policy of not paying for unused sick leave when employment ended, the employer was not obligated to pay the former employee for his unused sick leave.   *Id.* at 574–75; *see also Gress v. Petersburg Foods, LLC*, 592 S.E.2d 811 (W. Va. 2003) (directing that judgment be entered for the employer where the employee, seeking compensation for unused, accumulated vacation time, was aware of the employer's unwritten but consistently applied policy limiting the amount payable for unused vacation time upon separation from employment); *cf. Howell v. City of Princeton*, 559 S.E.2d 424 (W. Va. 2001) (reversing the dismissal of a WPCA claim for payment of unused sick leave because the record was unclear on whether the employees knew about the unwritten policy to the contrary).

The WVSCA later clarified its holdings in *Meadows* and *Ingram*.   *See Wolfe v. Adkins*, 725 S.E.2d 200 (W. Va. 2011).   In *Wolfe*, the plaintiffs were given three documents in the course of their employment, none of which addressed "sick leave in the context of termination from employment."   *Id.* at 201.   One was a "Policy and Procedure Manual," which did not contain any provisions concerning sick leave.   *Id.* at 201–02.   Another was a "General Order" that explained how employees were to accrue sick leave.   *Id.* at 202.   The last was a memorandum, which stated that the sick leave policy was "guided by WV State Code 7–14B–19C."   *Id.* (providing that § 7-14B-19(c) states that employees "may accumulate yearly sick leave in accordance with policy to

6

be established by the county commission"). To that extent, a page of the relevant county "Employee Personnel Handbook," which was not provided to the employees, stated that "[w]hen the services of an employee have been terminated, all sick leave credited shall be cancelled as of the last working day with the department. However, accumulated sick leave may be reinstated if a permanent employee is rehired by the Employer within a period of six (6) months from the date of separation." *Id*.

In determining whether the former employees were entitled to payment for their unused sick leave, the WVSCA first clarified that "[t]he 'terms of employment,'" as used by the *Meadows* Court, "not only include a written employment agreement but also includes the employer's personnel handbook or manual, personnel policy materials, memoranda and documents intended to be used by employers in establishing the benefits of their employees." *Id.* at 205 (citing *Younker v. Eastern Associated Coal Corp.*, 591 S.E.2d 254 (W. Va. 2003)). Based on the facts of the case, the WVSCA determined that the terms of employment "consisted of various documents and memoranda." *Id.* at 207.

However, none of those documents indicated that "employees . . . would receive compensation for accumulated sick leave upon termination from employment." *Id.* In fact, the record indicated that no employee "had ever been paid sick leave benefits upon termination." *Id.* Thus, because "[t]here were no representations, policies, memoranda or other documents granting the [] employees pay for accumulated sick leave upon termination from employment," they were not entitled to compensation for their accumulated sick leave. *Id.*

The holding was clear:

[W]here there is no provision in a written employment agreement, personnel handbook, personnel policy materials or employer documents granting employees

7

payment for unused, accumulated sick leave upon termination from employment, the unused, accumulated sick leave, upon termination from employment, is not a vested, nonforfeitable fringe benefit under the West Virginia Wage Payment and Collection Act and is not payable to the employees.

*Id.* To be crystal clear, the *Wolfe* Court backpedaled some of the language used in *Meadows*:

Problematic [] is the language in *Meadows* imposing a burden upon employers to negate a fringe benefit never conferred in the first instance, i.e., the employer must tell the employees what they will *not* receive as fringe benefits. That language is found in *Meadows* in the body of the opinion where it is stated that "the terms of employment in the instant case *do not* expressly state that employees who are separated from employment will *not receive* cumulative sick days not taken during the course of employment" (emphasis added).

*Id.* ("[T]he language in *Meadows,* suggesting that terminated employees are entitled to accumulated sick leave where the terms of employment do not 'expressly state' that they will not receive it, constitutes mere *obiter dicta . . . .*").

The WVSCA's recent decision in *Miller* did not change the legal landscape. In *Miller*, the terms and conditions of employment were governed by an "Employment Agreement," which provided that if an employee resigned for "Good Reason"—*i.e.*, because the employer "materially breached its contract obligations"—she would receive a severance package. 874 S.E.2d at 347. This severance package consisted of the employee's base salary (and potentially health insurance coverage) for a period of time. *Id.* at 348. If the employee resigned without "Good Reason" or was "Terminat[ed] for Cause," she would not be "entitled to any termination or severance payment, other than the compensation earned by the Employee for the period before the date of cessation of his/her employment calculated up to and including the date of cessation of his/her employment[.]" *Id.*

The plaintiff was also given an "Employee Handbook," which stated that her employer would pay her any "'accrued, unused paid time off' if she gave at least two weeks of notice before

8

resigning and if she left 'in good standing.'"   *Id.*   The Employee Handbook also stated that "[e]mployees providing proper notice will be considered to have left in good standing and may be eligible for the payment of certain accrued, unused paid time off."   *Id.* (also recognizing that employment was "at will," and either the employer or the employee could terminate employment "at any time, for any reason, with or without notice").   Proper notice constituted a written notice to human resources and the relevant department heads, with the date of notice, reason for termination, and the last day of work.   *Id.* at 348–49 (also requiring that "[m]anagement and all salaried staff must give 30 days' notice, and all other positions must give two weeks' notice").

The plaintiff in *Miller* tendered a resignation letter with all the required information.   *Id.* at 349.   Of relevance, the notice stated that her reason for termination was that she had received another job offer that was "too exciting to decline."   *Id.*   She provided this notice nearly two months in advance, but the parties later agreed that her employment would extend only two weeks beyond the date on which she tendered her letter.   *Id.*

Thereafter, the plaintiff filed a lawsuit alleging that her employer "failed to timely pay her wages on four occasions," which was a breach of the Employment Agreement, and she had "Good Reason" for resignation.   *Id.*   Consequently, the plaintiff claimed that her former employer had a "duty to pay her a severance package."   *Id.*   Based on these facts, she claimed that her former employer's failure to pay her the severance package under the Employment Agreement, as well as its failure to pay her for accrued, unused paid time off under the terms of the Employee Handbook, violated the WPCA.   *Id.*

The WVSCA agreed.   It found that "Good Reason" existed because the employer had breached its written contractual obligations by failing to timely pay her.   *Id.* at 352–53 (noting

9

that, even though her notice attributed her new job as the reason for her resignation, "[n]othing in the *Employment Agreement* required" consideration of any other "underlying or concurrent motivation or reason" beyond a breach of the Employment Agreement).

The *Miller* Court then addressed two separate but related issues.   First, was the severance package owed pursuant to the Employment Agreement "wages" under the WPCA?   Second, was the payment of accrued paid time off part of that severance package?   The Court answered both questions in the positive.

First, the severance package constituted "wages" under the WPCA.   The WVSCA reasoned that the Employment Agreement provided that "if an employee voluntarily resigns for good reason, he or she will be 'entitled to the Severance Package set forth'" in the Employment Agreement.   *Id.* at 354.   Thus, the severance package was "a benefit provided to employees . . . as an inducement to procure their services, and therefore, fits within the [WPCA]'s definition of a 'fringe benefit.'"   *Id.*

In considering whether this fringe benefit had "accrued," the WVSCA rejected the former employer's argument that the severance package was not "compensation for labor or services, could not be earned until after the end of the employment relationship, and was designed to be contractual damages owed to employees for suffering an unexpected loss."   *Id.* at 355.   Rather, the *Miller* Court reasoned that the severance package was "a form of deferred compensation for work performed during the employment," and, under the terms of the Employment Agreement, the severance package was "accrued, capable of calculation, and payable directly to" the plaintiff at the time of her resignation.   *Id.*

Second, payment for the plaintiff's accrued paid time off was part of the severance package. *Id.* at 356.    Distinguishing the facts from its prior decision in *Wolfe*, the *Miller* Court noted that the Employee Handbook "explicitly include[d] a provision regarding the payment of unused PTO upon the termination of an employment relationship."    *Id.* at 357.    Because the plaintiff apparently complied with the requirements contained in the Employee Handbook, she was entitled to a determination on whether she was qualified to receive payment for her unused paid time off as part of her severance package.    *Id.*

### B.  Application

Here, Defendant argues that Plaintiff has failed to state a claim because payment for his unused, accrued vacation does not constitute "wages" under the WPCA.    (ECF No. 6 at 5.) Defendant acknowledges that "there are situations in which accrued vacation time can be a 'fringe benefit' that falls within the definition of 'wages' under the WPCA."    (*Id.*)    However, relying on *Miller*, Defendant reasons that, because Plaintiff's alleged entitlement for payment of this vacation time was not "based upon a provision set forth in his employer's vacation policy (or its employee handbook)," it is not covered under the WPCA.    (*Id.*)

Conversely, Plaintiff relies on *Meadows* and *Wolfe* in claiming that "the terms of employment establishing [his] entitlement to the vacation pay are set forth clearly and unambiguously" in the Letter.[1]    (ECF No. 7 at 6.)    Plaintiff further argues that *Miller* supports his position that his accrued vacation pay promised upon termination constitutes wages under the

---

[1] Plaintiff also argues that that the WVWPA's definition of "wages" explicitly includes "regular vacation" and "graduated vacation."    (ECF No. 7 at 5 (citing W.Va. Code § 21-5-1(l)).)   For support, Plaintiff notes that the Letter specifically referenced his "unused accrued vacation that you have accumulated, starting on 6/11/24."    (*Id.*)

WPCA.   (*Id.* at 8–10 (reasoning that the Letter "procured the Plaintiff's services . . . in return for its promise to pay his accrued unused vacation pay").)

Nevertheless, Defendant contends that, rather than establishing terms of employment, the Letter "established terms of *separation from employment*."   (ECF No. 8 at 2 (emphasis in original); *see also* ECF No. 6 at 5–6; *cf.* ECF No. 7 at 10 (asserting that "Defendant's attempt to distinguish [] 'as an inducement [offered] to procure an employee's services' at the beginning of employment and severance offered 'upon termination' is a distinction without a meaningful difference").)   Further, Defendant asserts that the Employee Handbook does not grant Plaintiff a right to receive a payout of his accrued vacation upon termination.   (ECF No. 8 at 4.)   For support, Defendant offers the relevant excerpt from the Employee Handbook.   (*See id.*)

Ultimately, Plaintiff has plausibly alleged a violation of the WPCA.   As the WVSCA has made clear, the Court must look to the "terms of employment" to determine whether fringe benefits are "wages" under the WPCA.   *Meadows*, 530 S.E.2d at 689.   So, for example, if Defendant's Employee Handbook provides for payment of unused vacation upon separation from employment, then Plaintiff may be entitled to relief.   *Cf. Wolfe*, 725 S.E.2d at 207; *Meadows*, 530 S.E.2d at 690.   At the same time, though, the "terms of employment" can be encompassed in various documents.   *See Wolfe*, 725 S.E.2d at 205.   In particular, the WVSCA's decision in *Miller* stands for the proposition that the terms of a severance package can constitute "wages" under the WPCA if it was a term of employment that was "an inducement to procure [the employee's] services."   *See Miller*, 874 S.E.2d at 354–55; *but see Wolfe*, 725 S.E.2d at 207 (including a later-issued memoranda as part of the terms of employment).   So, for example, if Defendant's Employee

Handbook provides for a severance package upon separation from employment, then Plaintiff may be entitled to relief.  *See id.*

The Court acknowledges that Plaintiff's full "terms of employment" are not before the Court,[2] and whether Plaintiff can ultimately prove his WPCA claim is yet to be determined. Nevertheless, at this juncture, the well-pleaded factual allegations in the complaint contain "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570. Plaintiff claims he was employed by Defendant, was promised payment for accrued, unused vacation time, complied with the required terms to obtain payment for that accrued time, and did not receive payment.  Those allegations permit a reasonable inference that Defendant "is liable for the misconduct alleged" under the WPCA, depending on the terms of Plaintiff's employment. *See Iqbal*, 556 U.S. at 678.

Accordingly, Defendant's Motion to Dismiss, (ECF No. 5), is **DENIED**.

### IV.    CONCLUSION

For these reasons, Defendant's Motion to Dismiss, (ECF No. 5), is **DENIED**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        July 23, 2026

---

[2] At the motion to dismiss stage, the Court can consider the Letter because it "was integral to and explicitly relied on" in Plaintiff's Complaint.  *See Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (explaining that a court may consider extrinsic evidence at the 12(b)(6) stage if such evidence "was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity" (internal citations omitted)). Defendant's Employee Handbook, however, was not.  (*Cf.* ECF No. 8 at 4 n.2 (arguing that Employee Handbook is referenced in the Letter and, in his response to the motion to dismiss, Plaintiff relies on the Letter's reference to the Employee Handbook).)  Thus, the Court cannot consider it at this juncture.  While Defendant's frustration is understandable, (*see id.*), that is simply the nature of a motion to dismiss, and any procedurally improper request for limited discovery is **DENIED**.

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

14